Beth Creighton, OSB #972440
E-mail: beth@civilrightspdx.com
Michael E. Rose, OSB #753221
E-mail: mrose@civilrightspdx.com
CREIGHTON & ROSE, PC
300 Powers Building
65 S.W. Yamhill Street
Portland, Oregon 97204
Phone: (503) 221-1792
Fax: (503) 223-1516

Of Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **PALOMA GARCIA, aka MARIO GARCIA CARRILLO,**<br><br>Plaintiff,<br><br>vs.<br><br>**COLETTE PETERS, STEVEN SHELTON, JANA RUSSELL, CLAUDIA FISCHER-RODRIGUEZ, CHRIS DIGIULIO, ROBERT SNIDER, OFFICER RUIZ, SGT. KAMA, JOHN DOES I - VIII, in their individual capacities,**<br><br>Defendants. | Case No. 3:20-cv-00360<br><br>**COMPLAINT**<br><br>(Civil Rights - 42 USC §1983 - First, Eighth, Fourteenth Amendments; 29 USC §794 - Rehabilitation Act; 42 USC §12132 - ADA)<br><br>***JURY TRIAL REQUESTED*** |

I.

INTRODUCTION

1. Pursuant to 42 USC § 1983, 29 USC §794 and 42 USC §12132, Plaintiff alleges

PAGE 1 – COMPLAINT

CREIGHTON & ROSE, PC ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

the deprivation of rights guaranteed to her by the Eighth, First and Fourteenth Amendment to the United States Constitution and by federal statute. She seeks equitable relief, damages, fees and litigation expenses/costs, including expert witness fees and expenses.

## II.

## JURISDICTION

2. This court has jurisdiction by virtue of 28 USC §1343 and 28 USC §1331. Venue is proper in this district pursuant to 28 USC §§1391 (b) and 1391 (e). Defendants are located in Washington County, Oregon, and the events underlying this Complaint took place there, making venue proper in the District of Oregon, Portland Division.

## III.

## PARTIES

3. At all times material herein, the Oregon Department of Corrections (herein "DOC") was and is a Department of the State of Oregon created in ORS Ch. 423. Its purposes are to:

(a) Supervise the management and administration of the Department of Corrections institutions, parole and probation services, community corrections and other functions related to state programs for corrections;

(b) Carry out legally mandated sanctions for the punishment of persons committed to its jurisdiction by the courts of this state;

(c) Exercise custody over those persons sentenced to a period of incarceration until such time as a lawful release authority authorizes their release;

(d) Provide adequate food, clothing, health and medical care, sanitation and

PAGE 2 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

security for persons confined;

(e) Provide persons who are motivated, capable and cooperative with opportunities for self-improvement and work;

(f) Conduct investigations and prepare reports for release authorities; and

(g) Supervise persons sentenced or placed in the community for the period of time specified and in accordance with conditions of supervision ordered by the release authority.

The Oregon Department of Corrections is a recipient of federal funds.

4. At all times material herein, Plaintiff Paloma Garcia (hereafter "Garcia," aka Mario Garcia Carillo), was and is a transgender Latina woman, who, at all material times, had been incarcerated at the Coffee Creek Correctional Facility (CCCF), an Oregon state women's prison and prisoner intake center in Wilsonville, Washington County, Oregon, operated under the authority of and administered by DOC.

5. Defendant Colette Peters was at all relevant times the Director of ODOC. Defendant Peters exercised final policy- and decision-making authority over ODOC and its personnel at all relevant times. Defendant Peters had a duty to ensure the provision of adequate medical care to prisoners, and to reasonably protect prisoners facing a substantial risk of physical harm, including through the implementation of policies and the training and supervision of ODOC staff. Defendant Peters is among those responsible for denying Ms. Garcia medically necessary care and failing to reasonably protect Ms. Garcia from harm. She is sued in her individual capacity.

6. Defendant Steven Shelton was at all relevant times the Chief Medical Officer for

PAGE 3 – COMPLAINT

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

ODOC. Defendant Shelton exercised final policy- and decision-making authority regarding the care and treatment of transgender prisoners; exercised control over ODOC healthcare personnel; and had the final authority to grant or deny medical care to prisoners with gender dysphoria. Defendant Shelton had a duty to ensure the provision of adequate medical care to prisoners, and to reasonably protect prisoners facing a substantial risk of physical and psychological harm, including through the implementation of policies and the training and supervision of ODOC medical staff. Defendant Shelton is among those responsible for denying Ms. Garcia medically necessary care and failing to reasonably protect Ms. Garcia from harm, and is sued in his individual capacity.

7.  Defendant Jana Russell was at all relevant times the Administrator of Behavioral Health Services ("BHS") for ODOC. Defendant Russell exercised final policy- and decision-making authority regarding the mental health treatment of transgender prisoners, control over BHS personnel, and the authority to grant or deny mental health treatment to prisoners with gender dysphoria. Defendant Russell had a duty to ensure the provision of adequate mental health treatment to prisoners, and to reasonably protect prisoners facing a substantial risk of physical and psychological harm, including through the implementation of policies and the training and supervision of BHS staff. Defendant Russell is among those responsible for denying Ms. Garcia medically necessary care and failing to reasonably protect Ms. Garcia from harm, and is sued in her individual capacity.

8.  Defendant Claudia Fischer-Rodriguez was at all relevant times the Clinical Director of Behavioral Health Services ("BHS") for ODOC, and was a member of the GNC Therapeutic Level of Care Committee. Defendant Fischer-Rodriguez had a duty to ensure the

PAGE 4 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

provision of adequate mental health treatment to prisoners, and to reasonably protect prisoners facing a substantial risk of physical and psychological harm, including through the implementation of policies and the training and supervision of BHS staff.  Defendant Fischer-Rodriguez is among those responsible for denying Ms. Garcia medically necessary care and failing to reasonably protect Ms. Garcia from harm, and is sued in her individual capacity.

9. Defendant Chris DiGiulio, MD, was at all relevant times a physician working for ODOC, and was Ms. Garcia's physician from approximately early 2017 until Garcia's release. As such, Defendant DiGiulio had a duty to ensure the provision of adequate medical treatment to prisoners and particularly prisoners who were his patients.  Defendant DiGiulio is among those responsible for denying Ms. Garcia medically necessary care and failing to reasonably protect Ms. Garcia from harm, and is sued in his individual capacity.

10. Defendant Robert Snider, MD, was at all relevant times a physician working for ODOC, and was Ms. Garcia's physician from her admission to CCCF until approximately early 2017, and a resident of the State of Oregon. As such, Defendant Snider had a duty to ensure the provision of adequate medical treatment to prisoners and particularly prisoners who were his patients.  Defendant Snider is among those responsible for denying Ms. Garcia medically necessary care and failing to reasonably protect Ms. Garcia from harm, and is sued in his individual capacity.

11. Defendant Corrections Officer Ruiz was, at all times material herein, a corrections officer working at CCCF and an employee of Oregon DOC and, on information and belief, a resident of the State of Oregon, and is sued in his individual capacity.

12. Defendant Corrections Officer Sgt. Kama was, at all times material herein, a

PAGE 5 – COMPLAINT

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

corrections officer working at CCCF and an employee of Oregon DOC and, on information and belief, a residents of the State of Oregon, and is sued in his individual capacity.

13. Defendants John Does I - VIII, at all times material herein, were corrections officer working at CCCF and employees of Oregon DOC and, on information and belief, residents of the State of Oregon, and are sued in their individual capacities.

14. All of the actions of all of the Defendants alleged herein were taken under color of state law.

## IV. FACTS

### Background on Gender Dysphoria

15. Gender dysphoria, formerly known as gender identity disorder, is a medical condition in which an individual's gender differs from the gender the individual was assigned at birth, resulting in clinically significant distress.

16. Gender dysphoria is a recognized condition in the American Psychiatric Association's Diagnostic and Statistical Manual for Mental Disorders ("DSM-V"). Per the DSM-V, the diagnostic criteria for gender dysphoria are:

A. A marked incongruence between one's experienced/expressed gender and assigned gender, of at least six months' duration, as manifested by at least two of the following:

1. A marked incongruence between one's experienced/expressed gender and primary and/or secondary sex characteristics (or in young adolescents, the anticipated secondary sex characteristics).

2. A strong desire to be rid of one's primary and/or secondary sex

PAGE 6 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

characteristics because of a marked incongruence with one's experienced/expressed gender (or in young adolescents, a desire to prevent the development of the anticipated secondary sex characteristics).

      3.    A strong desire for the primary and/or secondary sex characteristics of the other gender.

      4.    A strong desire to be of the other gender (or some alternative gender different from one's assigned gender).

      5.    A strong desire to be treated as the other gender (or some alternative gender different from one's assigned gender).

      6.    A strong conviction that one has the typical feelings and reactions of the other gender (or some alternative gender different from one's assigned gender).

      B.    The condition is associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning.

      17.    There is medical consensus that gender dysphoria is a serious medical condition and those who suffer from gender dysphoria require treatment. The accepted standards within the medical community for treatment of gender dysphoria are the Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People ("Standards of Care"), published by the World Professional Association for Transgender Health ("WPATH").

      18.    The Standards of Care are the authoritative and internationally accepted treatment standards for gender dysphoria, and are accepted or endorsed by the American Psychiatric Association, the American Medical Association, the National Commission on Correctional

PAGE 7 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

Healthcare, the U.S. Department of Justice National Institute of Corrections, and courts that have examined the issue.

19. The Standards of Care apply to individuals in custodial settings.

20. Treatment for gender dysphoria includes social transition (dressing and presenting oneself in accordance with one's gender identity), hormone therapy, and surgeries. Appropriate treatment for the condition must be individualized based on the particular medical needs of the patient.

21. The Standards of Care make clear that psychotherapy by itself is not a substitute for social transition, hormone therapy, or surgeries where such treatments are medically required.

22. Persons who need to socially transition or continue or initiate hormone treatment during their incarceration are at risk of severe adverse outcomes if such treatment is denied. These adverse outcomes include suicidality, auto-castration, self-harm, anxiety, and depression.

23. Use of antidepressants and other psychotropic medications is medically inadequate to treat gender dysphoria and does not meet the prevailing Standards of Care.

**Operative Facts**

24. At all times material herein, Garcia was in the transition process from male (*sub nom*. Mario Garcia Carillo) to female, having begun hormone treatments, with injectable hormones, in 2014.

25. She was arrested on or about October 15, 2015, in Multnomah County Case No. 15CR13113, charging her with one count of possession and one count of delivery of a schedule I controlled substance. She was held in the custody of Multnomah County and was housed, at her request, as a woman.

PAGE 8 – COMPLAINT

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

26. On October 26, 2015, in Multnomah County Case No. 15CR13113, Garcia was convicted upon her guilty plea, of a single count of delivery of a schedule I controlled substance, and was sentenced to 45 months in the custody of the Oregon Department of Corrections. Upon sentencing, she was transferred to DOC custody at CCCF.

27. After sentencing, she was transported with the men to CCCF. Upon her arrival at CCCF, in late October, 2015, Garcia again expressed her need to be housed in a women's prison facility. Nonetheless, she was treated as a male. She was required by Sgt. Kama to shower with the men, undress with the men, and was strip searched as a man.

28. When Garcia was interviewed by the social work staff at CCCF, she advised that she considered herself a woman and identified herself as such whenever she was asked by DOC staff or anyone else.

29. She advised medical and social work staff that she felt that she was a woman, that she was a woman, that she was taking injectable hormones to facilitate the transition and that she had bottom surgery scheduled for some time in 2017.

30. Garcia did not want it known throughout the institution that she was in transition and what genitalia she had.

31. In January or February, 2017, she was repeatedly asked by corrections officers John Doe I and II about her genitalia, which led to rumor and speculation throughout the institution.

32. Notwithstanding her repeated requests, Garcia was not provided any hormone treatment for the first two months of her incarceration at CCCF.

33. Garcia suffered physically, mentally and emotionally from the denial of the

PAGE 9 – COMPLAINT

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

hormone treatment. She suffered from, among other things, depression and insomnia and began to feel that she was backtracking and detached from her own self. She began to re-grow facial and back hair, suffered from dry skin and began to have erections. The emotional effects were the most troubling.

34. After several months at CCCF, defendants, including Doctor Snider, began to administer small doses of oral hormones to Garcia. The course of administration of smaller oral dosages was inadequate to alleviate the symptoms and to restore Garcia to her transition. They also caused her stomach pain and constipation. Garcia repeatedly complained to medical staff that injectable doses of the hormones were necessary for her transition. She filed numerous formal grievances regarding the inadequacy of her medication, each of which was denied.

35. It was only after filing many grievance that medical staff began checking her hormone levels, which proved to be lower than they should have been to effect her transition.

36. In January or February 2017, Officer Ruiz stared at her and made derogatory comments about her breasts. She filed a grievance.

37. On May 4, 2017, while she was working in the infirmary, the same Officer Ruiz, in retaliation for her filing the grievance, asked her if she was waiting to have sex.

38. In May 2017, Garcia was removed from her job in the commissary by corrections officer John Doe III, who claimed that her English was not good enough, and offered another job cleaning floors. Another Spanish-speaking inmate was not removed from her job in the commissary.

39. In June 2017, she found a picture of herself in the trash which a beard and mustache drawn in. was filed. She filed another grievance.

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

40. In June 2017, the transgender committee changed her oral medication from Premarin to Estrace. On June 29, 2017, Garcia sent another kyte advising that the change in prescription did not help.

41. Prior to January 4, 2018, Garcia had filed multiple grievances regarding the harassment she had suffered from DOC staff.

42. On February 5, 2018, DOC corrections officers John Doe IV and V addressed her by her former name, Mario, to out her. She filed another grievance, which was denied.

43. In February, 2018, Garcia was asked questions about her genitalia and her transition by corrections officer John Doe VI, who was handing out the mail and staring at her breasts.

44. On or about March 1, 2018, she was still feeling the ill-effects of the inadequate hormone treatments, to the extent that she requested of the medical staff that she be castrated in order to reduce her testosterone level.

45. It was not until March or April of 2018 that she began to receive hormone injections. After 3 months of the injections, her hormone levels were back to where they should have been, and had been before she was deprived of her injections.

46. During this time, white inmates who were undergoing male-to-female gender transition were given injectable hormones.

47. In May 2018, she was sent legal mail from the Sexual Assault Research Center. The mail was opened by corrections officer John Doe VII. Garcia filed a grievance.

48. On or about May 20, 2018, during a random drug test, corrections officer John Doe VIII revealed that officers were aware of her transition, and the state of her genitalia, a fact

PAGE 11 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

that was only supposed to have been known by medical staff.

## V. CLAIMS

**FIRST CLAIM FOR RELIEF**
**42 USC §1983**
**Eighth Amendment Violation**
**Against Defendants Peters, Shelton, Russell, Fischer-Rodriguez, DiGiulio, Snider**
**in Their Individual Capacities**

49. Plaintiff incorporates paragraphs 1 through 48 as if fully set forth herein.

50. At all relevant times, Defendants were aware that Ms. Garcia had gender dysphoria, a serious medical need that compromises an individual's physical health and mental well-being when left untreated.

51. Defendants were aware that the medically accepted standards of treatment for gender dysphoria include hormone therapy, individualized talk therapy, and feminine gender expression and that such treatments were medically necessary for Ms. Garcia.

52. Defendants knew that the failure to treat Ms. Garcia's gender dysphoria consistent with prevailing medical standards including adequate hormone therapy placed Ms. Garcia at substantial risk of self-mutilation, auto-castration, and severe emotional distress.

53. Acting with deliberate indifference, Defendants, while acting under color of state law, have failed to provide medically necessary care to treat Ms. Garcia's gender dysphoria in violation of the Eighth Amendment's prohibition on cruel and unusual punishment.

54. Each of the Defendants personally and directly participated in the constitutional deprivations alleged.

55. As a direct and proximate result of Defendants' actions, Ms. Garcia has suffered and continues to suffer irreparable physical injury and emotional harm.

CREIGHTON & ROSE, PC
ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

56.   As a result of the denial of medically necessary care, Ms. Garcia has suffered physical and emotional injury, including outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

57.   Garcia seeks equitable relief in the form of training for Defendants, their agents and employees against racial and gender profiling, implementation of mandatory yearly training in the areas of diversity, cultural competency and anti-bias training and increased racial, ethnic and gender-focused diversity within DOC.

58.   Garcia seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC §1988 and 28 USC §1927, if appropriate.

59.   Defendants' conduct toward Garcia demonstrated a wanton, reckless or callous indifference to the constitutional rights of Garcia, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### SECOND CLAIM FOR RELIEF
### 42 USC §1983
### Retaliation for Filing Grievances and Complaints - First Amendment Violations Against All Defendants in Their Individual Capacities

60.   Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

61.   By retaliating against Garcia for her complaints and grievances about her treatment, Defendants violated her rights under the First Amendment of the United States Constitution, made applicable to the State of Oregon through the 14th Amendment.

62.   As a direct and proximate result of Defendants' unlawful acts, Garcia has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in

PAGE 13 – COMPLAINT

CREIGHTON & ROSE, PC | ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

amounts to be determined by the jury at trial.

63. Garcia seeks equitable relief in the form of providing training against racial and gender profiling, implementation of mandatory yearly training in the areas of diversity, cultural competency and anti-bias training and increased racial, ethnic and gender-focused diversity within DOC.

64. Garcia seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC §1988 and 28 USC §1927, if appropriate.

65. Defendants' conduct toward Garcia demonstrated a wanton, reckless or callous indifference to the constitutional rights of Garcia, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

### THIRD CLAIM FOR RELIEF
### 42 USC §1983
### Discrimination Based on Gender, Ethnicity - Fourteenth Amendment Violations
### Against All Defendants
### in Their Individual Capacities

66. Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

67. As described herein, Defendants unlawfully subjected Garcia to disparate treatment based on her ethnicity and gender.

68. As a direct and proximate result of Defendants' unlawful acts, Garcia has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

69. Garcia seeks equitable relief in the form of providing training against racial and gender profiling, implementation of mandatory yearly training in the areas of diversity, cultural

PAGE 14 – COMPLAINT

CREIGHTON & ROSE, PC    ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

competency and anti-bias training and increased racial, ethnic and gender-focused diversity within DOC.

70. Garcia seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs pursuant to 42 USC §1988 and 28 USC §1927, if appropriate.

71. Defendants' conduct toward Garcia demonstrated a wanton, reckless or callous indifference to the constitutional rights of Garcia, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

## FOURTH CLAIM FOR RELIEF
## 29 USC §794; 42 USC §12132
### Discrimination Based on Disability - Rehabilitation Act /ADA Violations
### Against All Defendants in their Individual Capacities

72. Plaintiff incorporates paragraphs 1 through 54 as if fully set forth herein.

73. As described herein, Defendants unlawfully subjected Garcia to disparate treatment and discriminated against her based on her disability, namely, gender dysphoria.

74. As a direct and proximate result of Defendants' unlawful acts, Garcia has suffered outrage, betrayal, offense, indignity, embarrassment, humiliation, injury and insult in amounts to be determined by the jury at trial.

75. Garcia seeks equitable relief in the form of providing training against racial and gender profiling, implementation of mandatory yearly training in the areas of diversity, cultural competency and anti-bias training and increased racial, ethnic and gender-focused diversity.

76. Garcia seeks recovery of all other equitable relief and punitive damages as provided by law, in addition to reimbursement of her reasonable attorneys' fees and costs

CREIGHTON & ROSE, PC  ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com

pursuant to 29 USC §794a and FRCP 54.

77. Defendants' conduct toward Garcia demonstrated a wanton, reckless or callous indifference to the constitutional rights of Garcia, which warrants an imposition of punitive damages in such amounts as the jury may deem appropriate to deter future violations.

**WHEREFORE**, Plaintiff Garcia prays for judgment against Defendants as follows:

1. Economic damages, consequential damages and prejudgment interest in an amount to be determined at trial;

2. Compensatory damages in an amount to be determined at trial;

3. All available equitable relief and damages in amounts to be determined at trial, consistent with the claims above against Defendants;

4. Punitive damages consistent with the claims above against Defendants in amounts to be determined at trial;

5. Reasonable attorneys' fees and litigation expenses/costs herein, including expert witness fees and expenses, consistent with the claims above against Defendants;

6. Prejudgment and post judgment interest as appropriate and allowed by law;

7. A declaration that Defendants violated her rights; and

8. Grant such other relief as is just and proper.

**PLAINTIFF HEREBY DEMANDS A JURY TRIAL.**

DATED this 4th day of March, 2020.

CREIGHTON & ROSE, PC.

 *s/ Beth Creighton*
Beth Creighton, OSB #972440
E-mail: beth@civilrightspdx.com
Michael E. Rose, OSB #753221
E-mail: mrose@civilrightspdx.com

PAGE 16 – COMPLAINT

CREIGHTON & ROSE, PC   ATTORNEYS AT LAW
65 SW Yamhill Street #300
Portland, OR 97204
T. (503) 221-1792
F. (503) 223-1516
beth@civilrightspdx.com